JULIA McKENNA v. ALABAMA & VICKSBURG RAILWAY
COMPANY.

[40 South. Rep., 426.]

1. RAILROADS. *Crossing gate. Injury to pedestrian.*

A railroad company is not liable for injury to a pedestrian who, while crossing its track in broad daylight, was struck by the descending beam of its gate used to stop passage when the track was needed for the movement of cars, no negligence in the operation of the gate being shown and it appearing that any person would see the beam, walking as the average person would.

2. SAME. *Negligence. No statutory presumption. Code 1892, § 1808.*

An injury resulting from the operation of a railroad gate at a street crossing does not give rise to the statutory presumption of negligence attending injuries inflicted by the running of railroad cars and locomotives, under Code 1892, § 1808.

FROM the circuit court of Warren county.

HON. OLIVER W. CATCHINGS, Judge.

Mrs. McKenna, the appellant, was plaintiff in the court below; the railway company, the appellee, was defendant there. From a judgment in defendant's favor, predicated of a peremptory instruction, the plaintiff appealed to the supreme court.

The plaintiff, while crossing defendant's track at Cherry street, in Vicksburg, was struck on the head by a descending beam of the railroad street gate. The occurrence took place in broad daylight, and plaintiff's witness testified that any person, walking as the average person would, would see the beam. No negligence was shown in the operation of the gate; in fact, nothing was shown except that the plaintiff was injured in the manner stated.

*Henry & Coleman,* for appellant.

While the fact that gates are open when a person approaches does not relieve him of the duty of looking and listening, yet, in

general, it is said to so modify the rule which exacts that duty of him as to take the question of his contributory negligence to the jury.    Some courts go further, and hold that persons approaching a railway crossing, where there is a gate, have a right to presume, in the absence of knowledge to the contrary, that the gateman is discharging his duty, and that it is not negligence upon their part to act upon the presumption that they are not exposed to the dangers that can arise only from a disregard by the gateman of his duties.    2 Thompson on Negligence (2d ed.), sec. 1531, and authorities cited.

Certainly the record shows the gates were open when the appellant passed under the first one, and she had the right to presume that if any danger menaced her the gateman would discharge his legal duty and warn her.    It is in evidence, and uncontradicted, that he did not do so; and this—under the rule laid down by Thompson, and which, we believe, is sound law—would bring to the jury the question as to whether her continuing across the tracks and across the street under the northern gate was contributory negligence.

In an Ohio case it was said that an open gate, with the gateman in charge, is notice of a clear track and a safe crossing, and that, in the absence of other circumstances, when the gates are open and the gateman present, as in the instant case, it is not negligence for persons approaching the crossing to drive upon the tracks at a trot or to pass over the tracks without stopping to listen.    *Railway* v. *Schneider,* 45 Ohio St., 678.

And again: "Where a railroad company has placed safety gates at a street crossing, it is its duty to operate the gates with reasonable care, so as to protect travelers not only from injury by cars, but also from the gates themselves.    It is said that if a pedestrian, on reaching a crossing, finds the gates raised and motionless, he has the liberty to proceed; and if it becomes necessary to lower the gates while he is between them, it must be done with due regard for his safety, and if it is negligently done, so

that he is struck by a gate, then there will be evidence of negligence to go to the jury. And in such case it will not be held, as matter of law, that the traveler must look at the second gate to see if it is coming down, but will be a fact for the jury to determine whether such failure to look constitutes contributory negligence." 2 Thompson on Negligence (2d ed.), sec. 1533.

And this is the exact law of our case; it fits the facts as they appear like a glove, except in that there seems to have been no necessity to lower the gates at all in the instant case. *Sager* v. *Atchison, Topeka & S. F. Ry. Co.*, 17 Am. Neg. Rep., 517.

*McWillie & Thompson,* for appellee.

It was perfectly clear that plaintiff's injuries resulted from her own inattention to what she was doing at the time she received them. There was no reason why the plaintiff should have been excused from making use of her faculty of sight. The occurrence took place in broad daylight, and the testimony of plaintiff's own witness shows that a person walking over the crossing as the average person would do, would see the beam.

But apart from plaintiff's manifest contributory negligence, the peremptory charge was right. The injury not having resulted from the running of a train, there was no presumption of negligence; and the plaintiff did not show negligence on the part of any one, for she left her injury wholly unexplained. The bare fact that the descending arm of the gate came in contact with her does not show that it was either negligently constructed or negligently operated.

The gates are so plain to observation, and are operated in such a way, that there is no probability of injury, and there was, in this case, no invitation resulting from seeing one gate—the nearest one—in an erect position. As the appellant did not pass through the southern gate, she cannot have availed of any invitation to do so, and this idea of invitation seems to be —in fact, is—the basis of the decisions and conclusions of the text writers relied on by appellant. There is nothing to show that

appellant observed the southern gate in even the most casual way.

The appellant owes what injury she sustained wholly to her own inattention and indifference to her surroundings. If her conduct on the occasion involved herein be characteristic of appellant, she may not get tangled up in the equator or snagged on the north pole, but is subject to injury by all less remote hazards.

Calhoon, J., delivered the opinion of the court.

There is nothing in the evidence of any negligence in the operation of the gate beams, as in *Feeney* v. *Railroad Co.,* 116 N. Y., 375 (22 N. E. Rep., 402; 5 L. R. A., 544). The showing of plaintiff is that she was struck by the beam in its descent as she was walking out in broad daylight, and her witness testifies that any person would see it, walking as the average person would. This is not a case of injury by railroad rolling stock, where negligence is presumed, and the damage here might well consist with proper care on the part of the operators of the gate.

*Affirmed.*

### Rehearing.

After the delivery of the foregoing opinion, counsel for the appellant moved the court for a rehearing, because they were unadvised of its submission until the above opinion had been delivered. Counsel for appellee consented to the rehearing, and the case was remanded to the docket.

The case was then heard a second time, with the result following:

Truly, J., delivered the opinion of the court on the rehearing.

That the accident and injury in this case is attributable solely to the appellant's inexcusable inattention is inescapable, from her own frank statement.

*Affirmed.*