**GANNAWAY v. LUNDSTROM.**

No. 11709.

Court of Civil Appeals of Texas. San Antonio.

June 4, 1947.

Rehearing Denied July 9, 1947.

Jerry D'Unger and Joe P. Hatchitt, both of Corpus Christi, for appellant.

Smith, Hyde & Barber, of Corpus Christi, for appellee.

NORVELL, Justice.

T. M. Gannaway has appealed from a judgment in the sum of $832.24, for the repair of a boiler, which was rendered in favor of R. Lundstrom doing business as Service Boiler Works. He contends that the judgment can not stand because of Article 3995, § 2, Vernon's Ann.Civ.Stats., which he specially pleaded as a defense below. This article and section provide that:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * *

"2. To charge any person upon a promise to answer for the debt, default or miscarriage of another; * * *."

Gannaway owned a certain business equipment known as the "Model Laundry and Cleaners" which he leased in 1942 to Mrs. V. Cummings and Wallace G. Banks for a period of ten years. This lease provided that "Lessees shall take good care of the property and its fixtures and suffer no waste, and shall, at Lessees' own expense and cost, keep said premises in good repair during the term of this lease. * * *" In 1944, Ira Mills secured the lessees' interest under said lease. Among the various articles of equipment used in the business covered by the lease was a "40 Horse Power Economy Boiler." In 1945, this boiler ceased to function properly and was repaired by Lundstrom. Lundstrom had certain conversations with both Gannaway and Mills and there is conflict in the testimony as to exactly what was said among the parties.

Special Issues Nos. 1 and 3, and the jury's answers thereto are as follows:

"Special Issue No. 1.

"Did plaintiff (Lundstrom) enter into the agreement in June, 1945, for repair of the boiler with both Gannaway and Mills or with Mills only?

"Answer: Both Gannaway and Mills.

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that Gannaway agreed to pay for the repairs to said boiler, if you have found that he did so agree, only in the event Mills failed to do so?

"Answer: Yes."

These issues and answers must be construed together. The proper construction thereof is that Mills and Gannaway entered into an expressed oral agreement with Lundstrom relating to the repair of the boiler (Special Issue No. 1.), but that under the terms of said agreement Gannaway was to pay for such repairs only in the event Mills failed to do so. Mills was primarily liable for the payment of the repair bill, while Gannaway under the agreement was liable only in case of default in payment on the part of Mills. The agreement not being in writing, the trial court erred in failing to sustain Gannaway's defense based upon the statute of frauds.

Housley v. Strawn Merchandise Co., Tex. Com.App., 291 S.W. 864; Higginbotham-Bartlett Co. v. Dickey, Tex.Civ.App., 27 S.W.2d 248.

Appellee submits the following counter point: "No error was committed by the court in refusing to hold that the implied contract sued upon was within the meaning of Section 2, Article 3995, of the Revised Statutes, commonly known as the statute of frauds. This is the only point involved on this appeal."

In the statement thereunder, it is said that "the testimony is conflicting as to the agreement concerning who was to pay appellee for the work, labor and services rendered and materials furnished in repairing the boiler."

It appears that Mills went into bankruptcy and the trustee abandoned any rights in and to the property owned by Gannaway and covered by the lease. The jury found that after the bankruptcy proceedings "Gannaway accepted and used said boiler." Upon this basis it is argued that Gannaway was liable to appellee upon an "implied contract."

At the time the boiler was repaired it was in the custody and under the control of Mills, under the terms of the lease above referred to, which obligated Mills to maintain the same in a state of good repair. The mere fact that Lundstrom repaired the boiler and thereafter Gannaway regained possession of the property after the trustee in bankruptcy had refused to administer the same, would not render Gannaway liable upon implied contract. In the absence of an express agreement, the lessor is not personally liable for repairs contracted for by the lessee, when the lease agreement places the duty of repair upon the lessee.

As above pointed out, the express agreement as found by the jury can not be enforced against Gannaway because of the statute of frauds.

It becomes our duty to render such judgment as the trial court should have rendered. The judgment appealed from is reversed and judgment here rendered that appellee take nothing.