ALABAMA MARBLE CO. v. UNITED STATES FIDELITY & GUAR-ANTY CO. *et al.**

(Division B.    Feb. 28, 1927.)

[111 So. 573.    No. 26026.]

MECHANICS' LIENS.    *Bond of contractor for private building held not to protect remote materialman (Laws 1918, chapter 128, section 3).*

Bond of building contractor for private building, aided by. Laws 1918, chapter 128, section 3, under which it was given, providing that it shall be subject to the additional obligation to make payments to all furnishing labor or material under said contract, *held* not to cover liability to any subcontractor or materialman beyond the first, who deals with and furnishes materials directly to the principal contractor.

---

*Corpus Juris-Cyc References: Mechanics' Liens, 40CJ, p. 358, n. 4 New.

APPEAL from chancery court of Hinds county.

HON. NILES MOSELEY, Special Chancellor.

Suit by the Alabama Marble Company against the United States Fidelity & Guaranty Company and others. Demurrer to bill sustained, and complainant appeals. Affirmed and remanded.

*Green, Green & Potter,* for appellant.

*This appellant was entitled to sue under the bond.* There was an obligation of the Sumner Sollitt Company

for the performance of the work and the furnishing of those materials which were supplied by appellant, and in supplying those materials Sumner Sollitt Company and the surety company were thereby relieved from liability therefor under the bond. The qusetion of the right to sue in Mississippi is dealt with in *Lee* v. *Newman,* 55 Miss. 374.

The bond here specifically provides that it shall be applicable to sub-contractors and to furnishers of material on or for said building. The statute was taken from the United States statute, and being adopted in Mississippi, there was thereby made applicable the decisions of the federal supreme court construing this law. *U. S.* v. *Am. Surety Co.,* 200 U. S. 197, 50 L. Ed. 437; *Accident & Indemnity Co.* v. *W. & J. Knox Net & Twine Co.,* 132 Atl. 261 (Md. 1926); *Independence Trust Co. et al.* v. *Porter & Boyd, Inc. et al.,* 132 S. E. 806 (N. C. 1926); *Yawkey-Crawley Lbr. Co.* v. *Sonaiko,* 206 N. W. 976 (Wis. 1926).

So far as this provision of the bond is concerned, substantially similar bonds in public contracts have been made effective by this court in *U. S. F. & G. Co.* v. *Yazoo County* (1926), 145 Miss. 378, 110 So. 780. See also, *Standard Oil Co.* v. *Nat'l Surety Co.,* 107 So. 559, 143 Miss. 841.

In *Surety* v. *Hall-Miller Decorating Co.,* 104 Miss. 626, a contract of this character was entered into.

*Wells, Stevens & Jones,* for appellee.

I. *Under the bond sued on this complainant has no right of action.* The most casual reading of the bond shows that it was not intended to protect any persons except: (a) The Lamar Life Insurance Company; (b) Persons contracting directly with Sumner Sollitt Company, either for labor or materials; that is, its own subcontractors and its own materialmen, with whom it contracted. These bonds are given in lieu of the statutory lien and where required by statute conserve only those

rights to contractors, subcontractors and materialmen which are given them by the mechanic's lien law.

In this state a subcontractor or a materialman would not have a lien on the property, but he may by giving the proper notice and claiming the benefit of the statute require the owner to pay him, providing the owner has not before that time settled with the original contractor. Laws of 1918, chapter 128, section 1. Hence, it follows that if the subconstractor has no lien, his materialman has none; and since the bond in this case stands in lieu of the statutory lien, appellant is in no better position than he would have been in an attempt to enforce a mechanic's lien against the property and has no right of action against the bond.

This is a private contract and not a public bond; and, hence, the Mississippi cases cited by appellant, to-wit: *U. S. F. & G. Co.* v. *Yazoo County,* 110 So. 780; *Standard Oil Co.* v. *Nat'l Surety Co.,* 107 So. 559; *Surety Co.* v. *Hall Miller Decorating Co.,* 104 Miss. 826, have no application. So likewise *U. S.* v. *Am. Surety Co.,* 200 U. S. 197, 50 L. Ed. 437.

Not a single case cited by counsel sustains the proposition that appellant has a cause of action on this bond considering the bond without reference to the effect of chapter 128, Laws of 1918.

II.   *Under chapter* 128 *Laws of* 1918, *this complainant has no right of action.* This is a statutory scheme for the protection of subcontractors and laborers. If anything is made plain by section 3, it is that the bond executed by the contractor protects only persons furnishing labor and material under said contract by a formal contract with the original contractor and in this case appellant did not furnish material to the Sumner Sollitt Company nor to Lamar Life Insurance Company, but to a subcontractor of the Sumner Sollitt Company.; and there is no allegation in the bill that the Sumner Sollitt Com-

pany has not paid its subcontractor nor is the subcontractor complaining.

Section 1, chapter 217, Laws of 1918, provides that the bond given by a contractor shall protect "all persons supplying labor or materials therefor" and further provides that "any person who has furnished labor or material used therein and wherefor payment has not been made" shall have a right to sue. In short, that law protects any person furnishing labor or material on the job.

In contract with the language of chapter 217, Laws of 1918, it will be noted that section 3, chapter 128, Laws of 1918, provides only that the contractor shall promptly make payment "to all persons furnishing labor or materials under *said contract.*" In short, there must be a contractual relation, under this section, between the original contractor and persons suing the surety of the contractor.

The reason for the difference between the laws is apparent. The legislature could not require any one to become liable for that which he had not agreed to become liable for, nor could it automatically enlarge the liabilities created by the contract of persons who are guaranteed freedom of contract under the law. It could not, as in the case of public contract, require that the contractor and the owner guarantee the rights of remote third persons and the legislature has not so attempted.

The language of section 1, chapter 128, Laws of 1918, is a rescript so far as it defines the persons protected, of section 1381, Code of 1880, and in *Rivers* v. *Mulholland,* 62 Miss. 766, this court through Justice CAMPBELL, ruled that subcontractors had no remedy.

HOLDEN, P. J., delivered the opinion of the court.

This suit is by the Alabama Marble Company to recover for certain materials used in the construction of

the Lamar Life Building, which was erected by Sumner Sollitt Company, as principal contractors for the erection of the building. The United States Fidelity Company was surety on the bond of Sumner Sollitt Company, and the Lamar Life Insurance Company was the owner of the building.

The suit, according to the complainant's bill, is for the purpose of recovering against the owner of the building and the surety company for about nine thousand dollars worth of marble material furnished by appellant, the Alabama Marble Company, that had not been paid for. The marble was not furnished by the marble company directly to the Sumner Sollitt Company, the original contractors for the erection of the building, but it appears that the marble was furnished to one Rider, who, in turn, furnished it to Sumner Sollitt Company, which company paid Rider for said marble, but Rider failed to pay the appellant, marble company, and hence this suit to recover against the principal contractor and his bond, and the owner of the building, the amount due by Rider, subcontractor of the principal contractor, Sumner Sollitt Company, to appellant.

So, in short, we have a case that presents the question of whether or not the bond of the principal contractor to erect a private building is liable to a remote materialman, or a remote subcontractor, for materials sold to a subcontractor and used in the construction of the building. The bond of the principal contractor in the case at bar contains the following language:

"If the Sumner Sollitt Company shall well and truly perform and fulfill all and every covenant, and stipulation . . . to be performed by it, and it shall repay to the Lamar Life Insurance Company sums which it may pay to other persons on account of work and labor done, or materials furnished, which the said Sumner Sollitt Company may fail to do or perform, or if the said Sumner Sollitt Company shall in all respects faithfully perform said contract and shall promptly make payment to

all persons supplying the said Sumner Sollitt Company with labor and materials in the prosecution of said work provided for in said contract, and to all subcontractors and to furnishers of material on or for said building, then this obligation shall be void.''

Chapter 128, Laws 1918 (section 3), provides as follows:

''That when any contractor or subcontractor entering into a formal contract with any person, firm or corporation, for the construction of any building or work or the doing of any repairs, shall enter into a bond with such person, firm or corporation guaranteeing the faithful performance of such contract and containing such provisions and penalties as the parties thereto may insert therein, such bond shall also be subject to the additional obligations that such contractor or subcontractor shall promptly make payments to all persons furnishing labor or material under said contract; and in the event such bond does not contain any such provisions for the payment of the claims of persons furnishing labor or material under said contract, such bond shall nevertheless inure to the benefit of such person furnishing labor or material under said contract, the same as if such stipulation had been incorporated in said bond.''

A demurrer to the bill was sustained by the lower court, and this appeal is prosecuted to settle the principles of the case.

It is urged by appellant, Alabama Marble Company, that the bond given here by the principal contractor, aided and supplemented by the provisions of the statute (section 3, chapter 128, Laws of 1918), providing that such bond shall inure to the benefit of persons furnishing labor or material under said contract, is liable for materials furnished to Rider, the subcontractor, who furnished it to Sumner Sollitt Company, the principal contractor, who used it in the construction of the building.

It is contended that the bond and the statute make the contractor liable to all persons for material and labor furnished in the construction of the building; and several decisions of this court are cited to support that position, but we find that all the decisions relied upon by counsel for appellant have reference to the statute providing for a bond to secure payment for labor and material furnished upon public buildings or public work, not private buildings or private work, as in the case before us.

We think there is quite a difference between the two statutes (chapter 217, Laws of 1918, and chapter 128, Laws of 1918), and that the bond of the contractor under chapter 217, Laws of 1918, requires that all laborers and materialmen must be paid for the labor and materials that go into the construction of the public buildings, regardless of whether they are remote materialmen, or whether they have furnished the materials directly to the principal contractor; but we do not think that the bond in this case, assisted by chapter 128, Laws of 1918, covers liability to any subcontractor or materialman beyond the first subcontractor or materialman who deals with, and furnishes materials directly to, the principal contractor.

To put it in different words, the bond here, which the law provides may be given to take the place of the old mechanic's lien, or materialman's lien, was intended to guarantee payment only to the contractor or materialman who deals directly with the principal contractor.

The statute uses the language that such bond shall be subject to the additional obligation that such contractor or subcontractor shall make payments to all persons furnishing labor or materials under said contract. The phraseology of the statute makes it plain, as we see it, that the bond is to protect only those who furnish labor or material to the principal contractor, because it refers expressly to "said contract" and "said bond."

It is our judgment that section 3, chapter 128, Laws 1918, does not intend to protect the remote materialmen in this character of private contract. To so hold might involve the constitutionality of the act with reference to impairing the freedom of contract.

If the statute is to be construed as appellant contends, then the principal contractor and his bond, and the owner of the building, would find it very difficult ever to know whether they had paid for the materials that went into buildings, even though they had settled with the persons with whom they dealt directly, and from whom they received the materials. The statute will not bear such construction.

The record seems to disclose that the appellant, marble company, gave notice to the owner of the building that it claimed to have furnished materials which went into the construction of the building and which were not paid for. However, it appears that at the time this notice was given, the owner, or the principal contractor, had already settled with Rider for the materials that went into the building; consequently, the notice was too late to catch any of the funds in the hands of the owner of the building.

The statute requiring bond to be given for payment of all materials and labor that go into the construction of public buildings or public work, is quite different from the statute involved in the instant case. There are good reasons for making the distinction, which are not necessary to be here set out.

In view of these conclusions, we think the lower court was correct in sustaining the demurrer to the bill, and the decree is affirmed, and the cause remanded.

*Affirmed and remanded.*