**MASSMAN CONST. CO. v. CITY COUNCIL OF GREENVILLE, MISS.**

No. 11139.

Circuit Court of Appeals, Fifth Circuit.

Feb. 26, 1945.

Rehearing Denied April 11, 1945.

Ernest Kellner, of Greenville, Miss., and Elbert Johnson, of Indianola, Miss., for appellant.

W. C. Keady and H. P. Farish, both of Greenville, Miss., for appellee.

Before McCORD, WALLER, and LEE, Circuit Judges.

926

WALLER, Circuit Judge.

Appellant brought suit in equity against the Appellee for the recovery of the sum of $21,300 which it claimed the Appellee had wrongfully withheld as liquidated damages for the failure of the Appellant to finish the construction of four bridge piers in the Mississippi River within the time limit of 350 days fixed in the contract between Appellant and Appellee. Another contractor built the superstructure of the bridge on these piers. Appellant consumed 109 days in excess of the 350 prescribed for the completion of its contract, but it was allowed 12½ days additional for extra work in sinking one of the piers to a greater depth than provided in the specifications, due to the misinformation supplied by the Appellee to Appellant as to subsurface conditions, so that the net delay in contract completion was reduced to 96½ days. On account of the delay Appellee charged Appellant $250 per day for the 96½ days, totalling $24,125, which it retained out of the contract price as liquidated damages, plus $875 for good measure. The following provisions in the contract are cited by the City as the basis of its right so to do:

"The bridge is to be operated as a toll project and *delay in completion will cause interference with traffic and losses, such as lost earnings, interest in investment, administration expenses and other tangible and intangible loss* and will incommode the public. *To cover partially such losses and expenses,* the Owner shall have the right to deduct from the total compensation otherwise due the Contractor as liquidated damages, fixed and agreed to in advance and otherwise indeterminate, * * * for each 24 hour calendar day that the entire work covered by the respective contract remains in an uncompleted state after the dates for completion herein provided: * * · * the sum of Two Hundred Fifty Dollars ($250.00) for each 24 hour calendar day." (Italics supplied.)

\* \* \* \* \*

"It is mutually agreed by the parties hereto that time is of the essence of this contract and in event the construction of the work is not completed within the time herein specified, it is agreed that from the compensation otherwise to be paid to the contractor, the first party may retain the sum of $250.00 per day for each day thereafter, Sundays and holidays included, that the work remains uncompleted, which sums shall represent the actual damages which the Owner will have sustained per day by failure of the Contractor to complete the work within the time stipulated and this sum is not a penalty but a stipulated damage the first party will have sustained in event of such default by the second party."

The western end of the bridge was in the State of Arkansas, which state had agreed to construct the highway leading to its end of the bridge. However, the entire bridge was finished at least 30 days before it could be utilized on account of the lack of a road leading to it from the Arkansas side of the river. "All dressed up and nowhere to go," the bridge sat unutilized for 30 days or more after its full completion, so that the delay by Appellant did not cause a delay in beginning the operation of the toll bridge with the attendant losses for non-operation which the contract sought to provide against. However, the City, demanding its pound of flesh, insists upon the right to have $250 per day as liquidated damages under its contract calling for the payment of a sum to cover partially such losses as lost earnings, interest on investment, administration expenses, and other ·tangible and intangible loss, and discommodity to the public caused by a delay in operating the toll bridge in consequence of the delay in the completion of Appellant's contract. The Court below denied the Appellant the right to recover the sum withheld as liquidated damages, but allowed recovery of the sum of $875, which was admitted to be due by the City.

Appellant, admitting the right of the City, under a subsequent agreement between it and the engineers, to retain the sum of $3700, and suing for only $21,300, claims: (1) That the provision for the payment of $250 per day was a penalty and not liquidated damages, and being a penalty the City would have no right in any case to recover as damages any sum in excess of that which it was shown to have actually sustained; (2) that the subsurface conditions under the piers was misrepresented by the City in that the data obtained by drilling, which the City furnished bidders, failed to show the true condition of the soil in the river bed, as well as the true facts as to the depth and current of the river; (3) that the engineers, having the power under the contract, and finding that the delay was for reasons beyond the control of the contractor, had granted an ex-

tension of time so that the City could rightly retain only the equivalent per diem of 14.8 days; (4) that the City, acting pursuant to the aforesaid finding by the engineers, having adopted a resolution that the contract was not completed on the completion date thereof "due to circumstances beyond the control of the contractor", ratified the act of the engineers and was bound thereby, either as a waiver of the right to damages or as an admission against interest to the effect that the delay was not the fault of the contractor; and (5) that Sundays should not be included because of the prohibition of the law of Mississippi against working on the Sabbath.

■ In construing a contract as to whether it calls for liquidated damages or a penalty, the main endeavor of the Court is to ascertain the intention of the parties, and that must be gleaned from the circumstances surrounding them and from a consideration of the purposes and provisions of the whole contract. Nomenclature is not controlling,[1] but the intention of the parties is the important, if not the conclusive, factor. Jones v. Mississippi Farms Co., 116 Miss. 295, 76 So. 880; 15 Amer.Jur. 674, § 243.

The quoted provisions of the contract show that the parties intended to provide for liquidated damages to cover partially "losses, such as lost earnings, interest in investment, administration expenses and other tangible and intangible loss" that would be *"caused by a delay in completion"* with the consequent delay in beginning the operation of the bridge. Even though we assume that the contract provided for liquidated damages instead of a penalty, nevertheless, the intent and purpose of the provision was to guard the City against a delay in opening the bridge and against only such losses as the parties anticipated would be caused by a delay in completion of Appellant's contract.

■ The term "actual damages" used in the second paragraph above quoted has reference to actual damages which the parties to the contract presupposed would be caused the City by the delay in the operation of the bridge as a result of the failure of the Appellant to complete its contract within the time provided, but if the contingency upon which the presupposition is based never happens, the presupposition must vanish.

There were no losses caused to the City by the delay in the completion of the piers or the bridge, because the bridge was completed in its entirety 30 or more days before there was a road to the bridge on the Arkansas side.

■ Unquestionably the soil under the river bed and under the piers was not as portrayed on the data furnished by Uvalde Construction Company, the firm which contracted with the City to make borings and report on subsurface conditions, and which data was furnished bidders by the City, although with the admonition that the bidders should make their own investigation and that the City was not to be considered as having warranted subsurface conditions to be as shown by the data supplied. Beyond doubt, the type of soil reported by the Uvalde Construction Company was not the type of soil actually encountered. It is without dispute that the company was greatly delayed because of a hard gray clay which it had to dynamite in order to get through. The specifications, based on the subsurface report, provided for the sinking of one of the piers to a depth of 65 feet, whereat would be found a soil sufficiently solid for the foundations of the pier, but it is conceded that when the prescribed depth was reached it was not the type of soil sufficient for the foundation of the pier and the contractor was required by the engineers to go down to a depth of 81 feet to find appropriate soil for the foundation, requiring 24 additional days' time, which clearly indicates the lack of accuracy of the subsurface data supplied by the City. There is evidence in the record that the stages, depth, and current of the river were not according to data furnished Appellant.

While under the provisions of the contract in this case the construction company doubtless would not have been able to recover for extra work on account of the alleged misleading and erroneous data as to the conditions under the bed of the river where the piers were to be placed, nevertheless, the delays and difficulties encountered due to misleading or inadequate information furnished by the City may appropriately be considered by a court of equity, in connection with all other facts and circumstances, in determining whether allowing the City to retain the sums in question would constitute the collection of

---

[1] Shields v. Early, 132 Miss. 282, 95 So. 839.

liquidated damages or the infliction of a penalty.

 Moreover, the engineers for the City, having the power so to extend the time of performance, found that the delay was for "reasons beyond the control of the contractor" and recommended that the City forego liquidated damages for the delay. The City Council then passed a resolution stating that the delay was for reasons beyond the control of the contractor and that the provision for the enforcement of liquidated damages would be waived provided the R. F. C. and P. W. A. would approve such waiver.

We agree with the lower Court that the engineers did not expressly exercise the power which they had under the contract to grant additional time for the construction, and we also agree that the resolution of the City, which was not concurred in by the aforementioned governmental agencies, was conditional and was not an agreement which, as such, would bind the City, but the statement by the engineers and the statement by the City were definitely admissions against interest, and seem to establish the fact that the delay attributed to the contractor was for causes beyond its control. The City and the engineers were not shown to have made these admissions in ignorance of the facts, and there does not appear to be any just reason why the City should not be bound thereby. These facts: (1) The admissions that the delay was for reasons beyond the control of the contractor; (2) that none of the losses which the Appellee undertook partially to protect itself against by the contract was caused by Appellant's delay in completing its construction; (3) the completion of the bridge on schedule; (4) the absence of a roadway leading to the bridge from the Arkansas end until long after full completion; fully exculpate Appellant from complicity in the causation of any such losses as the parties intended should have been attributable to Appellant under the contract.

We cannot overlook the fact, too, that 45% of the retained amount was a gift from the P. W. A. for the purpose of assisting in building a bridge and not for the purpose of unjustly enriching the City.

 Under all the facts and circumstances of this case, the enforcement of the provision in question would be inequitable and unreasonable,[2] and would amount to the infliction of a penalty rather than the allowance of liquidated damages.

The judgment of the lower Court is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

---

[2] In Chicago Investment Company v. Hardtner, 167 Miss. 375, 148 So. 214, text 217, the Supreme Court of Mississippi said:

"It is quite clear that parties may agree to liquidated damages and that equity will recognize and enforce that agreement if it is reasonable and proper under all the circumstances of the particular case, but an agreement for a stipulation of a fixed sum as liquidated damages is not infallible and in all cases binding upon a court of equity. This agreement may always be examined, and if the court be of the opinion that it is a penalty and unreasonable it will not enforce the stipulation, notwithstanding the declaration therein, the court will look through the form to the substance."

The lower Court held that the agreement for liquidated damages must be reasonable and proper under all the circumstances and cited with approval the case of Chicago Investment Company v. Hardtner, supra.